UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEREMY W. LOYD,

      Petitioner,

v.                              Case No: 6:22-cv-235-JSS-LHP

SECRETARY, DEPARTMENT OF
CORRECTIONS, and ATTORNEY
GENERAL, STATE OF FLORIDA,

      Respondents.

_____/

## ORDER

Petitioner, Jeremy W. Loyd, a state prisoner proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 1.)  Respondents, Secretary, Department of Corrections, and Attorney General, State of Florida, filed a response to the petition, (*see* Dkt. 9), and Petitioner filed a reply, (*see* Dkt. 12).  The petition raises eight grounds for relief, with each ground asserting ineffective assistance of counsel.  (Dkt. 1 at 16–28.)  Upon consideration, for the reasons outlined below, the court denies the petition.

## BACKGROUND

Petitioner was charged by amended information with trafficking in heroin (Count One), possession of cocaine with intent to sell or deliver (Count Two), possession of other controlled substances (Counts Three, Four, and Five), and use or possession of drug paraphernalia (Count Six).  (Dkt. 10-1 at 14–15.)  After jury selection for trial began, Petitioner entered an open plea of no contest to each count.

(*Id.* at 18–20, 47–51, 256–57.) About a month later, Petitioner moved to withdraw his plea based on emotional duress and substance use, and the motion was denied. (*Id.* at 21, 23, 37, 290, 400–36.) On Count One, the trial court sentenced Petitioner to seventeen years of imprisonment followed by eight years of probation. (*Id.* at 73.) The court also sentenced him to concurrent terms of fifteen years of imprisonment on Count Two, five years of imprisonment on each of Counts Three and Four, and time served on Counts Five and Six. (*Id.* at 73–74.)

Petitioner appealed, and Florida's Fifth District Court of Appeal affirmed his judgment and sentences per curiam. (*Id.* at 96–107, 112.) *See Loyd v. State*, 242 So. 3d 422 (Fla. Dist. Ct. App. 2018). Petitioner then moved through counsel for post-conviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 10-1 at 445–53.) The post-conviction court dismissed with leave to amend claims one, three, and four as facially insufficient, (*id.* at 454–55), and Petitioner amended his Rule 3.850 motion, (*id.* at 457–67, 508–18). The post-conviction court then denied claim six and part of claim five and set an evidentiary hearing on the remaining claims. (*Id.* at 545–49.) Following the evidentiary hearing, the post-conviction court denied all relief. (*Id.* at 627–38.)

Petitioner appealed, (*id.* at 809–39), and the Fifth District Court of Appeal affirmed the denial per curiam, (*id.* at 909). *See Loyd v. State*, 332 So. 3d 476 (Fla. Dist. Ct. App. 2021). Thereafter, Petitioner filed the instant Petition for federal habeas relief under 28 U.S.C. § 2254. (Dkt. 1.) Because the court can resolve the entire petition on

the record before it, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## APPLICABLE STANDARDS

Pursuant to the Antiterrorism Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, a federal court may not grant federal habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States[,] or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established [f]ederal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  Under the first basis, a "federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently" from how the Supreme Court "has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412–13.  Under the second basis, a "federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001) (quoting *Williams*, 529 U.S. at 409). Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *see Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (disregarding evidence not presented to state court in deciding whether the state court's decision was contrary to federal law).

Section 2254(d)(2) permits a federal court to grant habeas relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2). However, the state court's "determination of a factual issue . . . shall be presumed . . . correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *accord Parker*, 244 F.3d at 835–36.

To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must demonstrate that "counsel's performance was deficient." *Id.* at 687. To meet this prong, the petitioner must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* There is "a strong presumption that counsel's conduct

- 4 -

[fell] within the wide range of reasonable professional assistance," *id.* at 689, and consequently, counsel's performance is deficient only if it falls below "the range of competence demanded of attorneys in criminal cases," *id.* at 687 (quotation omitted). As the Eleventh Circuit has explained, the test for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [It] ask[s] only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts . . . should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. [The inquiry is] not interested in grading lawyers' performances; [it is] interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted).

Second, the petitioner must demonstrate that prejudice was suffered because of the deficient performance. *Strickland*, 466 U.S. at 687. Prejudice is established when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the petitioner has made an insufficient showing as to one. *See Strickland*, 466 U.S. at 697;

*Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).  Moreover, "[t]he standards created by *Strickland* and [section] 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (cleaned up). Accordingly, "the cases in which habeas petitioners can properly prevail on . . . ground[s] of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## ANALYSIS

The court first discusses the eight grounds for habeas relief raised in the petition. It then examines the certificate of appealability issue.

### 1. Ground One

In Ground One, Petitioner claims that his counsel committed three interrelated errors regarding the stop and search of his vehicle that led to his arrest:  (1) counsel failed to investigate the propriety of the stop and search, (2) counsel failed to move to suppress the evidence obtained during the stop and search, and (3) counsel misadvised him "concerning the possibility of challenging the stop, search[,] and arrest," which "induced [him] to enter his plea." (Dkt. 1 at 16–17.)  Petitioner asserts that he would not have pleaded no contest had he been advised that there was a potential ground for suppression—that the stop and search depended on information provided from an "untested informant of unknown reliability." (*Id.*)

Petitioner explains that "[t]he record contains no indication that [his] vehicle was stopped for any other reason than the information provided by

the . . . informant . . . .   No traffic violation was observed . . . [,] [n]or was any criminal activity observed . . . prior to the stop." (*Id.* at 16.)  Petitioner and the informant communicated through text messages, which were reviewed by law enforcement, and none of those communications contained the word "heroin" or discussed amounts of money. (*Id.* at 16–17.)  Additionally, Petitioner describes as inaccurate the information given by the confidential informant to law enforcement, noting that the informant described Petitioner's vehicle as "having dark tinted windows" when in fact the "vehicle driven by [him] the day of his arrest did not have [such] windows." (*Id.* at 17.)  Petitioner also arrived later than the informant indicated, and he did not stop at her house, as she said he would. (*Id.*)

Petitioner raised this claim in his Rule 3.850 motion. (Dkt. 10-1 at 511–12.) After holding an evidentiary hearing, the post-conviction court denied the claim as follows:

> Defendant testified that he asked counsel about filing a motion to suppress but that counsel advised him that he could not, in good faith, file such a motion.  Defendant also admitted that when his vehicle was searched, law enforcement found a safe in his trunk containing drugs.  He further stated that at the time of his arrest, he was in possession of a trafficking amount of narcotics.  Finally, he admitted that he was selling narcotics at the time of his arrest.  He just denied that he was selling narcotics to the [c]onfidential [i]nformant or that he had ever sold narcotics to her.

> [The allegedly ineffective attorney] testified that he reviewed the discovery evidence and deposed the officers involved in the incident.  He stated that based upon the evidence, he did not believe that he had a good faith basis to file a motion to suppress.  He also testified that once

Defendant's vehicle was stopped, the officers smelled burnt marijuana, which would provide a legal basis for searching his vehicle.

The defense spent a significant amount of time during the hearing cross-examining [the allegedly ineffective attorney] regarding excerpts of the depositions of the law enforcement officers. Based upon that questioning, it appeared that the [c]onfidential [i]nformant had not worked with law enforcement prior to the incident leading to Defendant's arrest. It was also established that the [c]onfidential [i]nformant provided mostly correct information regarding Defendant, but also incorrect information regarding the tint of the windows on Defendant's vehicle. Further, an officer watched and read the text messages as the [c]onfidential [i]nformant exchanged them with Defendant[;] however[,] he could not recall the specific details of those messages.

While Defendant was able to establish that the [c]onfidential [i]nformant lacked an established track record with these police officers, the issue of providing insufficient or incorrect evidence to support the stop was not satisfactorily established by Defendant. The issue of the tinted windows was the only issue to demonstrate a lack of knowledge on the part of the [c]onfidential [i]nformant. All of the other factual assertions made by the [c]onfidential [i]nformant proved to be true and accurate when Defendant pulled into the church parking lot. For that reason, Defendant has failed to persuade this [c]ourt that, had the requested motion to dismiss been asserted, he would have been successful in establishing a lack of reasonable suspicion for the stop. Therefore, Defendant has failed to meet his burden of proving both prongs of *Strickland* in this regard. Specifically, he has failed to demonstrate that he was prejudiced. Consequently, Defendant has failed to demonstrate an entitlement to relief as to Ground One.

(*Id.* at 629–30.) The Fifth District Court of Appeal affirmed the denial per curiam. (*Id.* at 909.)

Where, as here, the court is presented with an appellate court's per curiam

affirmance, the court "'look[s] through' the unexplained decision to the last related state-court decision" with "a relevant rationale" and "presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). Doing so in this case, the court concludes that the state courts' decisions were not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. The post-conviction court's summary of the evidentiary hearing testimony is supported by the transcript. Additionally, in denying this claim, the post-conviction court ultimately credited trial counsel's testimony. That decision and the post-conviction court's related findings of fact are presumed correct, and Petitioner has not presented clear and convincing evidence to rebut that presumption. *See* 28 U.S.C. § 2254(e)(1).

The Fourth Amendment protects an individual's "right to be free from arrest without probable cause." *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020). "The standard for determining the existence of probable cause is the same under both Florida and federal law—whether a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (cleaned up). Probable cause exists "when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995), and citing *Elliott v. State*, 597 So. 2d 916, 918 (Fla. Dist. Ct. App. 1992)).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), and it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," *id.* at 243 n.13.

A police officer may briefly detain an individual for further investigation under a lower standard than probable cause. *See Terry v. Ohio*, 392 U.S. 1 (1968). Such an investigatory, or *Terry*, stop may be conducted if the officer "ha[s] a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity. The 'reasonable suspicion' must be more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quoting *Terry*, 392 U.S. at 27). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Regarding information provided by a confidential informant, the "informant's 'veracity' or 'reliability' and his 'basis of knowledge' . . . are . . . relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for . . . by a strong showing as to the other." *Gates*, 462 U.S. at 233. Further, independent police corroboration of the information provided is not required. *United States v. Brundidge*, 170 F.3d 1350, 1353 (11th Cir. 1999).

Although Petitioner claims the information provided by the confidential informant was not reliable because (1) she stated that his car had tinted windows and

(2) Petitioner did not arrive at the time and place she originally indicated, the post-conviction court reasonably found, based on trial counsel's testimony, that the only error in the information provided was the description of tinted windows.

At the evidentiary hearing, trial counsel testified that he deposed Detective Graham,[1] who sat with and observed the confidential informant while she texted Petitioner to set up a meeting to buy heroin.[2]  (Dkt. 10-1 at 738–40.)  She was to arrange with Petitioner to purchase the amount she usually requests at the usual price.  (*Id.* at 756–57.)

According to information trial counsel learned through discovery, the informant told police Petitioner's name and physical description, described his vehicle as a blue Dodge Dart with heavily tinted windows, and "represented to them that he sells cocaine and heroin out of the trunk of his car."  (*Id.* at 753–54.)  The police confirmed the information, including Petitioner's name, date of birth, and registered vehicles, through the Driver and Vehicle Individual Database (DAVID).  (*Id.* at 754.)

Although the informant initially told police that Petitioner would show up in twenty to twenty-five minutes, Petitioner failed to show at the appointed time.  (*See id.* at 751–52.)  Trial counsel explained that the informant texted him again, found out he

---

[1] The record generally reflects that the detective's last name is spelled "Graham," (*see, e.g.*, Dkt. 10-1 at 227), though the name is spelled "Gram" in the evidentiary hearing transcript, (*see, e.g., id.* at 738).

[2] The informant assisted police because she had been detained by another officer earlier that day for possession of a controlled substance.  (*See* Dkt. 10-1 at 743–49, 756–57.)  Based on her substantial assistance in apprehending Petitioner (her supplier), the informant was not arrested for possession.  (*See id.*)

would be there in another ten to fifteen minutes, and relayed that information to police. (*See id.*) According to counsel, Petitioner subsequently arrived at the informant's residence and texted her to let her know he was there. (*Id.* at 756.) "[S]he . . . instructed him to drive to the church down by the street, and [Petitioner] was seen backing up . . . and driving . . . to the area . . . of that church." (*Id.*) Therefore, if trial counsel's testimony about the results of his investigation is credited, Petitioner indeed arrived at roughly the expected time (after his update via text to the informant) and in the expected place. He then followed the informant's additional instructions on where to park and meet.

Moreover, although it appears undisputed that the text messages did not use the word "heroin" and did not openly discuss any monetary price, that circumstance—as counsel explained at the hearing—"is not unusual in a street transaction. No dealer is going to tolerate someone mentioning specific amounts of money and specific controlled substances and the type of controlled substance," (*id.* at 758–59), because dealers do not want to "advertise" their illegal activities "for the world to see in black and white," (*id.* at 777).

Given (1) the police-verified details from the confidential informant, (2) the text message exchange overseen by Detective Graham between the informant and Petitioner regarding the transaction, and (3) Petitioner's observed conduct in relation to the text messages, a reasonable officer could find the confidential informant reliable. Upon observing the informant's reliability, a reasonable officer could believe her representations that she purchased heroin from Petitioner (who sold cocaine and

heroin from the trunk of his car) and could form "a reasonable, articulable suspicion based on objective facts that [Petitioner] ha[d] engaged in, or [wa]s about to engage in, criminal activity." *See Powell*, 222 F.3d at 917.

Once Petitioner was stopped, officers smelled cannabis in his vehicle, which established probable cause to search it without a warrant. (Dkt. 10-1 at 782.) *See United States v. Tamari*, 454 F.3d 1259, 1261–62 (11th Cir. 2006) (explaining that a warrantless "vehicle search will not violate the Fourth Amendment" if "the vehicle is operational and under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle" (cleaned up)); *see also United States v. Williams*, 731 F. App'x 863, 867 (11th Cir. 2018) ("[T]he smell of marijuana coming from a person's house or vehicle establishes probable cause for a search."). The search revealed a loaded revolver, ammunition, cannabis, methamphetamine, Phencyclidine-PCP, various types of drug paraphernalia, and a considerable number of plastic bags containing heroin and cocaine, (Dkt. 10-1 at 13, 782), all of which provided probable cause for Petitioner's warrantless arrest.

Considering that trial counsel's investigation revealed the existence of reasonable suspicion for the *Terry* stop and probable cause for the search of Petitioner's vehicle and his arrest, a reasonable attorney could conclude that further investigation into the propriety of the stop and search was unnecessary and that there was no valid basis to move for suppression of the evidence obtained during the search. Therefore, Petitioner has not shown that trial counsel erred by failing to investigate the propriety of the stop and search, failing to move to suppress the evidence, or misadvising

Petitioner about the possibility of challenging the stop, search, and arrest through a motion to suppress. Nor has Petitioner demonstrated prejudice from the alleged errors of counsel, because he has not shown a reasonable probability that a motion to suppress would have been successful.

As Petitioner has not satisfied either element required by *Strickland*, he has not demonstrated ineffective assistance of counsel as to Ground One.[3]

## 2. Ground Two

In Ground Two, Petitioner argues that counsel erred by failing to move for sanctions under *Brady v. Maryland*, 373 U.S. 83 (1963), "upon learning that officers for the Oviedo Police Department failed to preserve any of the text messages between the untested confidential informant and [Petitioner]," even though the text messages were the "sole ground[] for the stop and subsequent search of [Petitioner] and his vehicle." (Dkt. 1 at 18.) Petitioner explains that the officers "had the informant's cell phone in their constructive possession when they supervised the informant's exchange of text

---

[3] Petitioner presents three additional arguments in his reply: (1) the "officers claim[ed] to have smel[led] bur[n]t can[nabi]s coming from the vehicle[, but] they did not find any pipes or roaches[,] only a bag of weed," (2) "no office[e]r ap[p]roached the vehicle until after [his] arrest," and (3) the state law permitting a search upon smelling cannabis violates the Fourth Amendment to the United States Constitution. (Dkt. 12 at 5–6.) However, Petitioner is not permitted to raise new issues in his reply. *See United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012) (citing *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008)). Moreover, Petitioner did not raise these concerns in the state court. (*See* Dkt. 10-1 at 511–12, 824–26.) Consequently, Petitioner failed to exhaust, and has procedurally defaulted, these issues. *See* 28 U.S.C. § 2254(b)(1)(A); *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[T]he prohibition against raising non[-]exhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief."). Because Petitioner does not demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome the default, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001), these issues are procedurally barred from habeas review.

messages with [Petitioner]." (*Id.*) Further, the officers "took [Petitioner's] cell phone into evidence at the time of [his] arrest." (*Id.*) Petitioner contends that counsel "should have challenged the admission of any and all evidence which flowed from the stop and subsequent search of [Petitioner] and his vehicle" because the stop and search were "based on the missing text messages." (*Id.*) Alternatively, Petitioner argues, counsel should have moved to dismiss the charges. (*Id.*)

Petitioner raised this claim in his Rule 3.850 motion. (Dkt. 10-1 at 512–13.) The post-conviction court denied the claim following an evidentiary hearing and explained:

> In Ground Two, Defendant asserts that trial counsel was ineffective for failing to move for sanctions on the basis that the [s]tate failed to disclose or preserve the text messages between Defendant and the [c]onfidential [i]nformant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). At the hearing, Defendant testified that the text messages would have revealed that Defendant and the [c]onfidential [i]nformant were arranging a sexual encounter and that they were not arranging a drug transaction. According to Defendant, the text messages would have showed that the [c]onfidential [i]nformant "invited him over to play," which he asserts meant "to have sex." When he informed her that he had another woman with him, she responded, "Come on over. Let's have some fun." He took this to mean that they would have a sexual threesome. Defendant acknowledged that the word "sex" was not expressly used in the text messages, but that he understood "play" to mean "sex." He also testified that he never sold drugs to the [c]onfidential [i]nformant, but whenever they met for sexual encounters, they would use drugs together, which he would provide. Defendant testified that the text messages would not have directly mentioned money or drugs.
>
> Defendant testified that he asked counsel about

obtaining the text messages after he read the depositions. This was because the officer testified at his deposition that he did not document the text messages and could not recall exactly what was said but that drugs and money were not mentioned. Defendant acknowledged that the cell phone he possessed at the time should contain the text exchange with the [c]onfidential [i]nformant and that the phone was seized by law enforcement when he was arrested. To the best of Defendant's knowledge, the phone is still in the possession of law enforcement. It was not returned to him when he bonded out of jail following his arrest. Defendant testified that his phone was password protected at the time, but he cannot currently recall the password. He also acknowledged that the [s]tate possessed a jail call he made to his wife the day after his arrest. During the call he asked his wife to ask "Kevin" to try to remotely wipe his cell phone. Defendant testified that he did this because he had other personal information on his cell phone.

[The allegedly ineffective attorney]'s testimony was in direct conflict with that of Defendant's. He testified that Defendant never informed him that Defendant and the [c]onfidential [i]nformant had a sexual relationship. Rather, he testified that Defendant acknowledged to him that the text exchange was regarding a drug transaction and that the nature of his relationship with the [c]onfidential [i]nformant was that of drug dealer and customer. [The allegedly ineffective attorney] also testified that he did not believe that there was evidence that law enforcement acted in bad faith when they failed to preserve the text messages. He testified that he could have subpoenaed the text messages from Defendant's service provider, but that based upon what Defendant told him, he did not believe there was any reason to do so. Rather, [the allegedly ineffective attorney] believed he could utilize law enforcement's failure to preserve the text messages *against* the prosecution at trial as evidence of sloppy police work. Furthermore, given the lack of bad faith and the fact that the defense had other means to obtain the text messages, he did not believe there was a basis for a motion for sanctions based upon law enforcement's failure to preserve the text messages.

Having weighed the credibility of the testimony at

- 16 -

the evidentiary hearing, and after observing the demeanor of Defendant and trial counsel, the [c]ourt accepts the facts as testified to by counsel.  Therefore, the [c]ourt finds that Defendant never informed [the allegedly ineffective attorney] that he had a sexual relationship with the [c]onfidential [i]nformant.

. . .

Defendant has failed to establish that the [s]tate suppressed favorable evidence.  First, there was no evidence presented at the hearing that the text messages were not still available had Defendant's phone been examined.  The only evidence presented regarding the possible destruction of the text messages was that Defendant asked his wife to have someone try to wipe his phone remotely after his arrest.  Therefore, Defendant has not demonstrated fully that the [s]tate failed to preserve the text messages.  Additionally, [the allegedly ineffective attorney] testified that he could have obtained the text messages from Defendant's cell phone provider.  Therefore, Defendant could have obtained the evidence himself.  Consequently, Defendant has failed to demonstrate that a *Brady* violation occurred, and any motion for sanctions based upon *Brady* would have been futile. . . . As such, . . . Defendant has failed to demonstrate an entitlement to relief as to Ground Two.

(*Id.* at 630–33 (footnote omitted).)  The Fifth District Court of Appeal affirmed the denial per curiam.  (*Id.* at 909.)

The post-conviction court's description of the evidentiary hearing testimony is supported by the transcript, (*see id.* at 660–789), and the state courts' decisions were not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.

The "principles of due process dictate that, in a criminal proceeding, the prosecution must disclose evidence favorable to the defendant."  *Rimmer v. Sec'y, Fla.*

*Dep't of Corr.*, 876 F.3d 1039, 1054 (11th Cir. 2017) (citing *Brady*, 373 U.S. at 87, and

*Banks v. Dretke*, 540 U.S. 668, 691 (2004)).  To establish a *Brady* violation, Petitioner

must satisfy four elements: (1) "the government possessed evidence favorable to the

defendant (including impeachment evidence)," (2) "the defendant [did] not possess the

evidence[,] nor could he obtain it himself with any reasonable diligence," (3) "the

prosecution suppressed the favorable evidence," and (4) "had the evidence been

disclosed to the defense, a reasonable probability exists that the outcome of the

proceedings would have been different."  *Baxter v. Thomas*, 45 F.3d 1501, 1506 (11th

Cir. 1995) (quotation omitted).

The post-conviction court credited trial counsel's testimony, and Petitioner

presents no clear or convincing evidence to overcome the presumption that the post-

conviction court's credibility determination and other related factual findings are

correct.  *See* 28 U.S.C. § 2254(e)(1).  Given that trial counsel indicated he could have

obtained the text messages by subpoenaing Petitioner's service provider but that he

believed there was no reason to do so based on what Petitioner had told him, Petitioner

failed to show that he could not have obtained the evidence himself.  Consequently,

as to Ground Two, Petitioner has not established a *Brady* violation, and he has not

shown that counsel erred by failing to move for *Brady*-related sanctions.  *See Baxter*, 45

F.3d at 1506.

### 3.  Ground Three

In Ground Three, Petitioner maintains that counsel erred by failing to inform

him of a potential entrapment defense and failing to move to dismiss the charges based on entrapment.  (Dkt. 1 at 19.)  He explains that he and the confidential informant had a prior sexual relationship and that the text messages the informant sent him at the direction of law enforcement on the day of his arrest "promised to resume their sexual relationship if [he] would come to meet with her."  (*Id.*)  Petitioner notes that although law enforcement depositions and the arrest affidavits described the text messages as showing that Petitioner would provide the informant with a controlled substance, Detective Graham, who was present with the informant when she sent the text messages, did not recall the text messages specifically mentioning "heroin" or a quantity of money.  (*Id.*)  Petitioner asserts that he "does recall [the] content of the[] text messages and would state that they were of a sexually explicit nature and were designed to lure him to a sexual encounter with the informant, which the informant said could also include the passenger of [Petitioner's] vehicle."  (*Id.* at 19–20.)  Petitioner contends that counsel should have informed him that entrapment was a defense available to him in a motion to dismiss and at trial and that had he known entrapment was an available defense, he would not have entered a plea.  (*Id.* at 20.)  He claims that he would have prevailed on the entrapment defense because the record demonstrates that he "had no prior history of selling, delivering, or trafficking in illegal drugs."  (*Id.*)

Petitioner raised this claim in his Rule 3.850 motion.  (Dkt. 10-1 at 514–15.)  Following the evidentiary hearing, the post-conviction court denied the claim, providing this explanation:

As discussed above, Defendant never informed [the allegedly ineffective attorney] that his relationship with the [c]onfidential [i]nformant was sexual in nature. Rather, [the allegedly ineffective attorney] testified that Defendant told him that the text exchange was regarding a drug transaction and that was the nature of his relationship with the [c]onfidential [i]nformant. Therefore, there was no reason for [the allegedly ineffective attorney] to believe Defendant had a viable defense based upon objective entrapment or for counsel to further investigate such a defense.

When " . . . counsel has reason to believe pursuing certain lines of defense would be fruitless or even harmful, counsel does not act unreasonably in not pursuing them." *Reed v. State*, 875 So. 2d 415 (Fla. 2004), cert. denied, *Reed v. Florida*, 543 U.S. 980 (2004). Moreover, the reasonableness of counsel's investigative decisions depends upon the information provided by Defendant. *Strickland*, 466 U.S. at 691. Based upon the information Defendant provided to [the allegedly ineffective attorney] and his review of the discovery in the case, [the allegedly ineffective attorney] had no reason to investigate a defense regarding objective entrapment or to tell Defendant about that as a possible defense. Therefore, Defendant has failed to demonstrate that trial counsel was ineffective and thus has failed to demonstrate an entitlement to relief as to Ground Three.

(*Id.* at 633–34.) The Fifth District Court of Appeal affirmed the denial per curiam. (*Id.* at 909.)

As with Grounds One and Two, the post-conviction court's summary of the evidentiary hearing testimony is supported by the transcript, and Petitioner presents no clear or convincing evidence to overcome the presumption of correctness due the post-conviction court's factual findings. *See* 28 U.S.C. § 2254(e)(1). The Supreme Court has explained:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland*, 466 U.S. at 691. According to trial counsel, Petitioner did not tell him that the text messages or his relationship with the confidential informant were sexual in nature. Based on trial counsel's review of the discovery and Petitioner's representation that the text exchange arranged a drug transaction, counsel reasonably believed there was no viable entrapment defense. As Petitioner has not demonstrated that counsel erred in the manner alleged, Petitioner has not shown ineffective assistance of counsel. As to Ground Three, the state courts' decisions were not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.

### 4. Ground Four

In Ground Four, Petitioner contends that counsel did not timely inform him of a fifteen-year plea offer, which "was conveyed to counsel during the deposition of one of the state witnesses." (Dkt. 1 at 20.) Petitioner states that counsel disclosed the offer to him only after the time to accept had expired. (*Id.* at 21.) When Petitioner asked

counsel the reason for the delay, Petitioner claims that counsel knew Petitioner would turn down the offer anyway. (*Id.*) Petitioner asserts that had he been advised of the plea offer, he would have accepted it, the prosecutor would not have revoked it because the prosecutor "promis[]ed to keep the offer available . . . until pretrial," the trial court would have accepted the offer, and he would therefore be serving a significantly shorter term of imprisonment. (*Id.*)

Petitioner raised this claim in his Rule 3.850 proceedings. (Dkt. 10-1 at 515–16.) After holding an evidentiary hearing, the post-conviction court denied it as follows:

> In Ground Four, Defendant asserts that trial counsel failed to timely inform him of the [s]tate's plea offer of fifteen . . . years of imprisonment. Defendant testified at the hearing that he did not learn of the [s]tate's plea offer of fifteen . . . years until after the offer had expired. Importantly, he also acknowledged that he would not have accepted the plea offer even if he had known about it.
>
> [The allegedly ineffective attorney] testified that as soon as he began representing Defendant, he informed Defendant that the trafficking charge carried a minimum mandatory sentence of fifteen . . . years of imprisonment. Regarding the [s]tate's plea offer, [the allegedly ineffective attorney] testified that he promptly informed Defendant of the offer, but Defendant believed that fifteen . . . years was too harsh a sentence. Therefore, Defendant rejected the plea offer.
>
> . . .
>
> Having weighed the credibility of the testimony at the evidentiary hearing, and after observing the demeanor of Defendant and trial counsel, the [c]ourt accepts the facts as testified to by counsel. Therefore, Defendant has failed to establish that trial counsel failed to convey the plea offer.

> [The allegedly ineffective attorney] testified that he promptly informed Defendant of the offer and that Defendant rejected it because he believed fifteen . . . years was too harsh. However, even if this [c]ourt were to believe that [the allegedly ineffective attorney] failed to timely convey the plea offer, Defendant testified that he would not have accepted the offer. Therefore, Defendant failed to present any evidence to establish he was prejudiced pursuant to *Alcorn* [*v. State*, 121 So. 3d 419 (Fla. 2013)]. Consequently, Defendant has failed to demonstrate an entitlement to relief as to Ground Four.

(*Id.* at 634–35.) The Fifth District Court of Appeal affirmed the denial per curiam. (*Id.* at 909.)

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012).

> [W]here a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* at 147; *see also Alcorn v. State*, 121 So. 3d 419, 426–30 (Fla. 2013).

As with Petitioner's other claims reviewed above, the transcript of the evidentiary hearing supports the post-conviction court's findings as to the statements made by Petitioner and counsel, and Petitioner presents no clear or convincing

evidence to overcome the presumption that the post-conviction court's decision to credit trial counsel's testimony was correct. *See* 28 U.S.C. § 2254(e)(1).  Based on trial counsel's credited testimony, trial counsel informed Petitioner the very first time they met that he faced a mandatory minimum sentence of fifteen years of imprisonment. (Dkt. 10-1 at 720.)   Additionally, when trial counsel received the plea offer, he "[i]mmediately" conveyed the offer to Petitioner, and Petitioner had no interest in accepting it. (*Id.* at 719.)  According to trial counsel, Petitioner felt the offer "was [for] just an astronomical amount of time[,] . . . and he could not conceive of . . . that length of a sentence." (*Id.* at 719–20.)

Moreover, Petitioner testified under oath that after he found out about the plea offer, he did not discuss accepting it with trial counsel—"[m]aybe" because it was no longer available but also because he believed counsel could move to suppress the evidence. (*Id.* at 676.)  On cross examination, Petitioner affirmed that he "never would have accepted a [fifteen]-year offer" at that time. (*Id.* at 698.)  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).   Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary. *See, e.g.*, *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").  In his reply, Petitioner expresses that he "knows he messed up when he said he would not have accepted this offer at the evidentiary hearing[.]  [T]he[re] were too many other variables at play.  If not for those other issues[,] [he] would have accepted the fifteen[-

]year plea offer." (Dkt. 12 at 9.)[4] This explanation does not contradict his evidentiary hearing testimony on this point. Thus, Petitioner has presented no compelling evidence showing that his sworn testimony—that he would not have accepted the plea offer—was false. As Petitioner has not demonstrated the requisite error or prejudice under *Strickland* for Ground Four, the state courts' decisions were not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.

### 5. Grounds Five and Six

The court discusses Grounds Five and Six together because they overlap. In Ground Five, Petitioner argues that trial counsel "failed to adequately review and familiarize himself with the discovery in [Petitioner's] case and subsequently failed to request sanctions when the state failed to disclose several items of discovery in a timely manner." (Dkt. 1 at 21.) Specifically, although counsel "assured [Petitioner] that the discovery provided by the state was complete," at the final pretrial conference "the state disclosed three additional discs of discovery, including photographs from the scene of [Petitioner's] arrest, [a] video recording made by law enforcement of the stop of [Petitioner's] vehicle, and [Petitioner's] telephone records." (*Id.* at 22.) Later, the state provided "a Florida Department of Law Enforcement (FDLE) lab report [that] attested to the weight and nature of the suspected controlled substance found . . . in

---

[4] Although Petitioner asserts that "other variables" and "other issues" existed, he does not specifically identify the variables or issues. To the extent that Petitioner references the various issues raised in the petition, those issues do not merit federal habeas relief for the reasons outlined in this order.

[Petitioner's] possession. (*Id.*) Petitioner explains that the lab report "contradicted the
original sworn statements of various [Oviedo Police Department] officers regarding
the weight of the drugs [and] number[] of bag[]s containing drugs," (*id.*), and counsel
"failed to move for the deposition of the FDLE lab analyst upon learning of the
discrepancies," (*id.* at 23). Further, when questioned, "counsel replied in open court
that he did not know what was or was not in [Petitioner's] discovery and that he would
have to refer to [Petitioner's] knowledge of what had been previously disclosed, as
counsel had to[o] many cases to keep track." (*Id.* at 22.) Given these discovery-related
deficiencies, Petitioner maintains that counsel advised him to "enter[] a plea based on
incomplete information," and therefore, his plea was not entered knowingly or
voluntarily. (*Id.* at 23.)

Similarly, in Ground Six, Petitioner contends that counsel erred by "failing to
investigate discrepancies in the heroin and cocaine evidence" and failing to move to
suppress the heroin and cocaine evidence due to tampering. (*Id.* at 24.) Petitioner
faults counsel for believing the discrepancies were "no big deal" because, Petitioner
claims, the report showed that the heroin and cocaine weighed more out of the bags
at the lab than they did in the bags when weighed by the officers. (*Id.*) He notes that
the officers counted forty-nine individual bags of heroin that weighed a total of
nineteen grams, and they counted one hundred bags of cocaine that weighed a total of
twenty-five grams. (*Id.*) Nonetheless, the FDLE lab report stated that the lab received
fifty bags of heroin that weighed nineteen grams without the bags. (*Id.*) The lab also
received only ninety-two bags of cocaine and weighed only seventy-five of them,

which came to a total of twenty-nine grams without the bags. (*Id.*) Petitioner questions why the lab did not weigh the remainder of the cocaine bags or provide a description of the bags received (for example, their size, shape, and color), and he complains that the lab thus made it impossible for the defense to understand how the discrepancies occurred. (*Id.* at 24–25.) Petitioner acknowledges that Sergeant Varkony "file[d] a supplemental report[] stating that he might have miscounted or misconveyed the number of bags of cocaine to Detective Graham." (*Id.* at 25.) However, Petitioner contends that the supplemental report does not address the heroin discrepancies, he was not given the FDLE reports until the day before trial, he was never given the supplemental report, and the supplemental report "was only referenced at" the hearing on the motion to withdraw his plea. (*Id.* at 26.) Overall, Petitioner argues, the discrepancies show that "[t]he heroin and cocaine [were] not in the same condition as they were when they were seized on the day of [his] arrest." (*Id.* at 25.) Thus, counsel should have moved to suppress the evidence due to tampering. (*Id.* at 26.)

The court divides its discussion of Grounds Five and Six into five parts. It examines (a) the state post-conviction court's rulings, (b) the timeliness of disclosure and appropriateness of a sanctions motion, (c) counsel's investigation of and advice about evidence, (d) the failure to move to suppress the heroin and cocaine evidence, and (e) prejudice under *Strickland*.

### a.  State Post-Conviction Court's Rulings

Petitioner raised most of the claims asserted in Grounds Five and Six together

in claim five of his Rule 3.850 motion.  (Dkt. 10-1 at 516–17.)  The post-conviction

court summarily denied the motion as it pertained to the timeliness of disclosure and

the appropriateness of a motion for sanctions:

> Defendant asserts that trial counsel should have moved for
> sanctions due to the late disclosure of certain evidence and
> that counsel's advice about the plea was tainted by the
> failure of counsel to familiarize himself with the
> evidence. . . .
>
> . . . [T]he record shows that the [s]tate timely
> disclosed the evidence to counsel.  Because the [s]tate
> complied with its discovery obligations, there would have
> been no basis to impose sanctions against the [s]tate for
> counsel's failure to share those details with . . . Defendant.
> "[C]ounsel cannot be deemed to be ineffective for failing to
> raise a motion that would have been futile."  *Gordon v. State*,
> 863 So. 2d 1215, 1223 (Fla. 2003).
>
> . . . Defendant first claims that the [s]tate only
> provided videos and photographs of the arrest and recorded
> jail calls from . . . Defendant.  It is true that the [s]tate only
> provided those items to counsel on March 2, 2017, two
> weeks before jury selection.  (See Supplemental Discovery,
> attached as Exhibit A).  However, the [s]tate disclosed and
> offered access to those exhibits to . . . Defendant in its initial
> response to the demand for discovery, contingent
> on . . . Defendant providing blank media to the [s]tate.  (See
> Response to Defendant's Demand for Discovery, attached
> as Exhibit B).  This is sufficient to satisfy the [s]tate's
> discovery obligation.  *See State v. Williams*, 678 So. 2d 1356,
> 1357 (Fla. [Dist. Ct. App.] 1996) (holding that[] "[a]lthough
> the rule is silent regarding who may bear the cost of the
> document inspection or copying, any reasonable
> construction of the rule would place the burden of any
> copying costs upon the defendant.").  There would have
> been no basis to seek sanctions for the failure to disclose
> these items.
>
> . . . Defendant also alleges that the [s]tate did not
> timely provide lab results showing discrepancies in the

weight and packaging of the drugs, which contradicted the
information in the sworn police reports. [Sergeant]
Varkony supplemented his report, explaining the
discrepancies, on September 3, 2016. This report was
provided to counsel on September 21, 2016. (See
Supplemental Discovery, attached as Exhibit C). The
[s]tate provided the name of the lab analyst in its initial
discovery response and provided her lab report on
November 22, 2016. (See Exhibit B; Supplemental
Discovery, attached as Exhibit D). Counsel had also been
provided the lab results regarding the heroin. (See excerpts
of motion hearing transcript, attached as Exhibit E).
As . . . Defendant's case was not set for trial until March 13,
2017, these items were provided to counsel with ample time
to prepare for their use at trial. Accordingly, there was no
*Richardson*[5] violation, so there would have been no basis to
seek sanctions against the [s]tate for a discovery violation.
"[C]ounsel cannot be deemed to be ineffective for failing to
raise a motion that would have been futile." *Gordon v. State,*
863 So. 2d at 1223.

(*Id.* at 547–48.)

The post-conviction court held an evidentiary hearing on the remainder of the

claims—that is, counsel's review of, and discussions with Petitioner about, the heroin

and cocaine evidence. The post-conviction court denied relief as follows:

Defendant asserts that trial counsel failed to advise him
regarding discrepancies in the evidence. This claim is based
upon that fact that the initial police report reflected that law
enforcement seized 100 bag[]s of suspect cocaine, weighing
26 grams. However, the FDLE report reflected only 92
bag[]s of cocaine, and that the weight of 75 bag[]s was 28.54

---

[5] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971). "A *Richardson* hearing is held to determine whether
the [s]tate committed a discovery violation in contravention of the Florida Rules of Criminal
Procedure and, if so, whether the non[]compliance resulted in prejudice to the defendant's ability to
prepare for trial." *Cisneros v. McNeil*, No. 8:05-cv-762-T-27GW, 2008 U.S. Dist. LEXIS 33345, at
*16 n.4 (M.D. Fla. Apr. 23, 2008).

grams.[6]  Defendant testified that there were pieces missing
from the discovery.  According to Defendant, [the allegedly
ineffective attorney] made the comment, "I wonder what
the lab report says."  Defendant testified that he did not see
the lab report until late in the afternoon on March 13, 2017,
the day before the case was set to go to trial.  He testified
that he did not have an opportunity to call anyone and ask
about the import of the amounts not matching.  According
to Defendant, when [the allegedly ineffective attorney]
mentioned the discrepancy in the numbers of bag[]s
collected, he indicated that it was unimportant and was
merely a mistake.

  [The allegedly ineffective attorney] testified
differently.  He stated that he received two . . . FDLE lab
reports in this case.  The report dated May 26, 2016[,]
addressed the heroin[], while the report dated August 18,
2016[,] addressed the cocaine.  He testified that he received
them close to the times they were written, and he
immediately reviewed each report.  [The allegedly
ineffective attorney] also testified that he would have
promptly discussed the reports with Defendant.
Subsequently, [Sergeant] Varkony prepared a supplemental
report indicat[ing] that the discrepancy in the amount of
bag[]s was due to a counting error and that 92 bag[]s was
the correct amount.  This report was prepared in September
2016, and despite the existence of a contemporaneously
filed notice of supplemental discovery regarding the report,
[the allegedly ineffective attorney] testified that he did not
recall receiving or reviewing the supplemental report in
September of 2016.

  [The allegedly ineffective attorney] testified that he
first reviewed the one[-]page supplemental report after the
matter came up during his discussions with the Assistant
State Attorney regarding resolving the case.  [The allegedly
ineffective attorney] could not recall if this conversation
occurred on March 13, 2017, when the case was set for jury

---

[6] In a footnote, the post-conviction court noted "a discrepancy regarding the number of bag[]s of heroin
in Defendant's possession[:] [t]he police report listed 49 bag[]s, but the FDLE report listed 50."  (Dkt.
10-1 at 635 n.2.)  The post-conviction court further observed that, "[h]owever, the focus at the hearing
was regarding the cocaine."  (*Id.*)

selection, or at the prior court date. During the discussion, the Assistant State Attorney mentioned that he had considered amending the cocaine charge to a trafficking charge because the amount exceeded 28 grams, and this led to a discussion of [Sergeant] Varkony's supplemental report. The Assistant State Attorney then provided [the allegedly ineffective attorney] with a copy of the one-page report. He reviewed it and then reviewed it with Defendant.

[The allegedly ineffective attorney] testified that he received the supplemental report prior to Defendant entering his plea and that nothing contained in the report would have affected his trial preparation or his advice regarding the plea. He testified that while he could not specifically recall discussing the discrepancy with Defendant, it was possible that they discussed it. [The allegedly ineffective attorney] testified that Defendant was not charged with trafficking regarding the cocaine, and therefore the discrepancies were not material. He said that even if Defendant possessed one-tenth of the number of bag[]s, he could be charged with possession with intent to sell.

As stated above, this [c]ourt finds [the allegedly ineffective attorney]'s testimony credible. Therefore, the evidence established that [the allegedly ineffective attorney] discussed all of the discovery with Defendant prior to entry of the plea. Furthermore, Defendant failed [to] present any evidence that the issue regarding the discrepancies impacted his decision to enter the plea he entered in this case. Consequently, Defendant has failed to demonstrate an entitlement to relief . . . .

(*Id.* at 635–37.) The Fifth District Court of Appeal affirmed the denials per curiam. (*Id.* at 909.)

For the reasons that follow, the state courts' decisions were not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.

### b. Timeliness of Disclosure and Appropriateness of Sanctions Motion

As the post-conviction court determined, the state disclosed the videos, photographs, and recorded jail telephone calls on March 2, 2017, which was approximately two weeks before jury selection began on March 13, 2017. (*Id.* at 251, 256–57, 550.) Trial counsel explained at the evidentiary hearing that the state disclosed those discovery items in June 2016 in response to Petitioner's demand for discovery and that "the practice is to submit" to the state the "blank[] . . . DVDs or CDRs and they will provide those to you in response to the request." (*Id.* at 727–28.) Close to trial, as he was working on the case, counsel realized he overlooked those items, so he immediately requested and obtained them from the state. (*Id.* at 728.)

The record shows that the state disclosed the FDLE lab analyst's name on June 17, 2016, in response to Petitioner's discovery demand, (*id.* at 552), and counsel testified that he received the FDLE lab report regarding the heroin in June 2016, (*id.* at 773). The state produced the lab report regarding the cocaine on November 22, 2016, (*id.* at 561–62), and Sergeant Varkony's supplemental report was disclosed on September 21, 2016, (*id.* at 558–60).

To the extent the post-conviction court credited trial counsel's testimony, Petitioner presents no clear and convincing evidence to overcome the presumption that the post-conviction court's credibility determination was correct. *See* 28 U.S.C. § 2254(e)(1).

Although the ultimate question before the court is one of ineffective assistance

of counsel, the underlying issue of whether sanctions against the state were warranted under *Richardson* is a matter of state law, and "state law is what the state courts say it is." *Pinkney v. Sec'y, DOC*, 879 F.3d 1290, 1299 (11th Cir. 2017); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Because the record shows the identified discovery items were disclosed (and, as to the videos, photographs, and recorded telephone calls, access was provided to the defense) well before trial, the post-conviction court's determination that the state's disclosures were timely was not unreasonable. The court is, accordingly, bound by the determination that there was no basis for sanctions against the state under *Richardson*, and Petitioner has not shown that counsel erred by failing to move for such sanctions.

### c. Counsel's Investigation of and Advice About Evidence

The court now turns to Petitioner's claims that counsel failed to investigate and advise him regarding the evidence and discrepancies in the cocaine and heroin evidence, rendering his plea unknowing and involuntary.

At the evidentiary hearing, counsel testified that once he received the videos, photographs, and recorded jail telephone calls, he immediately reviewed them himself, and then he reviewed them with Petitioner. (Dkt. 10-1 at 728–29.) Counsel confirmed that such review occurred before jury selection (which began March 13, 2017) and before Petitioner entered his plea (which occurred on March 14, 2017). (*Id.* at 729.)

Concerning the FDLE lab reports, counsel recalled receiving and reviewing the heroin lab report around the time the state responded to the demand for discovery in June 2016 and the cocaine lab report in August 2016. (*Id.* at 773.) He recalled providing the initial batch of discovery to Petitioner through Petitioner's wife, who copied the discovery and returned it to counsel. (*Id.* at 736.)[7] Although when counsel was later preparing for trial he could not find the copies of the FDLE reports, counsel believed he simply misfiled them. (*Id.* at 424, 772.) Counsel further stated that by the March 2, 2017 trial scheduling conference, he had reviewed the substance of the FDLE reports with Petitioner. (*Id.* at 773.) Counsel recalled that he discussed the FDLE lab reports with Petitioner during a phone call, in person at counsel's office, or in both manners. (*Id.* at 764–65.)

Regarding Sergeant Varkony's supplemental report, counsel testified that he did not recall reading it when it was disclosed in September 2016, but he became aware of it during a discussion with the prosecutor that occurred either on March 13, 2017, or on the date of the prior hearing. At the time, the prosecutor considered amending the information to include a charge for trafficking in cocaine instead of possession with intent to sell. (*Id.* at 724–26.) Counsel obtained a copy of the supplemental report from the prosecutor, (*id.* at 724), and reviewed it with Petitioner, (*id.* at 768). Although

---

[7] Counsel's recollection in this regard aligns with his representation to the trial court at the hearing on Petitioner's motion to withdraw his plea. There, counsel stated that he recalled reviewing the FDLE reports "at the time that [he] originally received discovery from the [s]tate." (Dkt. 10-1 at 424.) Counsel described the discovery provided as "a significant number of . . . documents" and explained that he provided the discovery to Petitioner, who "made a copy [of the discovery] and returned [counsel's] copy to [his] office." (*Id.*)

counsel could not "recall having a discussion with Petitioner about" the discrepancies with the number of bags or the weight of the drugs, counsel explained, "that's not to say that it did not happen. . . . I'm not certain.  It's just been too long."  (*Id.*)

Once again, the state post-conviction court credited counsel's testimony.  (*Id.* at 637.)   Petitioner challenges this finding and contends that when counsel was questioned as to why he did not relay the evidence to Petitioner, counsel admitted in open court that he did not know what was in the discovery and that he would have to defer to Petitioner's knowledge on that topic. (Dkt. 1 at 22.)  However, this contention is not entirely accurate.  The statements from counsel to which Petitioner refers occurred at the plea withdrawal hearing.  The transcript of the hearing makes clear that counsel asserted—but attempted to minimize—his recollection that he provided the discovery to Petitioner before March 13, 2017.  During closing argument, counsel reported (as he also did at the later post-conviction evidentiary hearing) that he recalled receiving, reviewing, and providing the FDLE reports to, and discussing them with, Petitioner.  (Dkt. 10-1 at 424, 736, 764–65, 773.)  He followed by stating that as to "Petitioner's claiming that he had not seen those reports prior to March 13[] . . . [counsel] would have to defer to [Petitioner] because [counsel] ha[d] an active caseload and . . . several trafficking cases that [were] pending."  (*Id.* at 424–25.)

Given the context of the hearing, this follow-up makes sense.  Counsel was placed in a difficult situation where he was required to advocate for Petitioner at the

- 35 -

hearing on Petitioner's motion to withdraw his plea,[8] even though part of Petitioner's asserted reason to withdraw involved counsel's allegedly late provision to him of the FDLE reports.  (*Id.* at 408–10.)  Counsel balanced his duty to remain truthful in his representations to the trial court, *see* Fla. R. Pro. Conduct 4-3.3, and his duty to advocate for his client.

Under these circumstances, Petitioner has not established clear or convincing evidence overcoming the presumption that the post-conviction court's decision to credit trial counsel's testimony was correct.  *See* 28 U.S.C. § 2254(e)(1).  Thus, based on counsel's credited testimony, Petitioner has not established that counsel erred by failing to review or familiarize himself with, or provide to or advise Petitioner about, the discovery (including the videos, photographs, recorded jail telephone calls, FDLE reports, and Sergeant Varkony's supplemental report).

Regarding the discrepancies between the FDLE reports and the police report describing the number of bags of drugs and the weight of the drugs, which were followed by Sergeant Varkony's supplemental report, the post-conviction court also credited counsel's explanation that "the information was never amended to a trafficking charge in lieu of the [charge for] possession of cocaine with intent to sell,"

---

[8] Counsel argued, based on Petitioner's testimony at that hearing, that the circumstances surrounding the entry of Petitioner's no contest plea warranted withdrawal of the plea.  (Dkt. 10-1 at 423–27.) Those circumstances included that (1) Petitioner was emotionally distraught that day, to the point he thought of committing suicide, (2) Petitioner was under the influence of controlled substances, specifically cocaine and marijuana, which he had consumed that morning, (3) Petitioner had not slept much the night before, and (4) that Petitioner was frustrated with counsel for not filing the motions he desired to be filed (such as a motion to suppress) and for not providing the FDLE reports to him before March 13, 2017.  (*Id.* at 404–10, 423–27.)

(Dkt. 10-1 at 635–37, 725, 727), and absent a trafficking charge, the discrepancies were not material because a person with one-tenth of the amount can "be charged with possession with intent to sell," (*id.* at 775).   Further, even the initial police report weighing the heroin at a total of nineteen grams, (*see* Dkt. 1 at 24; Dkt. 10-1 at 13),[9] was sufficient to charge Petitioner in Count One with trafficking in fourteen grams or more, but less than twenty-eight grams, of heroin.   Consequently, counsel did not err in failing to further investigate the discrepancies or depose the lab analyst.

### d. Failure to Move to Suppress Cocaine and Heroin Evidence

Petitioner additionally contends that counsel should have moved to suppress the cocaine and heroin evidence based on tampering.   However, Petitioner concedes that he did not raise this claim before the state courts.   (Dkt. 1 at 12, 26; *see* Dkt. 10-1 at 510–18.)   Thus, Petitioner did not exhaust this claim.   *See* 28 U.S.C. § 2254(b)(1)(A).

"'[S]tates can waive procedural bar defenses in federal habeas proceedings,' including exhaustion."   *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (alteration in original) (quoting *Hills v. Washington*, 441 F.3d 1374, 1376 (11th Cir. 2006)).   "However, a state's mere 'failure to raise exhaustion does not constitute a waiver under AEDPA, which mandates that 'a [s]tate shall not be deemed to have waived the exhaustion requirement unless the [s]tate, through counsel, *expressly* waives the requirement.'"   *Id.* (alterations adopted) (quoting *McNair v. Campbell*, 416 F.3d

---

[9] Although Petitioner contends that the initial police report indicated drug weights that included the weight of the plastic bags containing the drugs, Sergeant Varkony stated in the arrest report that "[a]ll the drugs['] weights [were of] the substances only and [did] not include the plastic bags."   (Dkt. 10-1 at 13.)

1291, 1304 (11th Cir. 2005).

Here, Respondents state that Ground Six "is generally the same as the remaining sub-part" of Ground Five "in Petitioner's Rule 3.850 motion." (Dkt. 9 at 18.) However, they do not state whether Petitioner exhausted Ground Six, nor do they mention Petitioner's claim that counsel should have moved to suppress the evidence based on tampering. (*See id.* at 18–21.) Thus, Respondents have not expressly waived the defense of exhaustion as to this portion of Ground Six. *See Martin v. Hamm*, No. 1:21-cv-460-TFM-MU, 2024 U.S. Dist. LEXIS 90396, at *4 (S.D. Ala. May 20, 2024) ("In *Vazquez*, the state very specifically admitted that ' . . . the claims were fairly presented to the state court and are exhausted.' 827 F.3d at 966 n.1. The [s]tate never made such a clear waiver in [the petitioner's] case[,] though. Admittedly, the [s]tate acknowledged that [the petitioner] raised the sufficiency issue in the [state] courts, and the [s]tate addressed the merits of that claim in its response to the habeas petition, but the [c]ourt does not see where the [s]tate ever expressly waived exhaustion like the state did in *Vazquez*. The [c]ourt declines to read the [s]tate's acknowledgment that an issue was raised in state court as a complete waiver of an exhaustion defense. Raising an issue in state court does not equate to exhausting it.").

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). In his reply, Petitioner notes that he raises this claim

under *Martinez v. Ryan*, 566 U.S. 1 (2012).  (Dkt. 12 at 14–15.)  Under *Martinez*, "[w]here . . . claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding" such as a Rule 3.850 motion for post-conviction relief, the ineffective assistance of counsel or lack of counsel during that proceeding may constitute "cause" to overcome a procedural default.  566 U.S. at 17.  However, a petitioner establishes such "cause" only if he demonstrates a "substantial" claim of ineffective assistance of trial counsel.  *Id.* at 18.  To show that a defaulted claim of ineffective assistance of counsel is substantial, a petitioner "must demonstrate that the claim has some merit."  *Id.* at 14.  The "substantiality of the ineffective-assistance-of-trial-counsel claim" is "analyzed under the familiar [*Strickland*] framework."  *Ayestas v. Davis*, 584 U.S. 28, 50 (2018) (Sotomayor, J., & Ginsburg, J., concurring).

The admissibility of evidence is a matter of state law.  *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).  Under Florida law, "[r]elevant physical evidence is admissible unless there is an indication of probable tampering."  *Armstrong v. State*, 73 So. 3d 155, 171 (Fla. 2011) (quoting *Peek v. State*, 395 So.2d 492, 495 (Fla. 1980)).  As the Supreme Court of Florida has explained,

> to demonstrate probable tampering, the party attempting to bar the evidence must show that there was a probability that the evidence was tampered with—the mere possibility is insufficient.  Once the party moving to bar the evidence has met its burden, the burden shifts to the non[-]moving party to establish a proper chain of custody or submit other evidence that tampering did not occur.

*Id.* (citations omitted).  A "gross discrepanc[y]" in drug weights may demonstrate a probability of tampering under this standard.  *See Dodd v. State*, 537 So. 2d 626, 628

(Fla. Dist. Ct. App. 1988) (explaining that "gross discrepancies in the recorded weights
and packaging details," including a difference of roughly sixty-eight grams in weight
and conflicting descriptions of an evidence bag, "indicate[d] probable tampering"); *see
also Thurber v. Jones*, No. 3:15cv398/MCR/EMT, 2017 U.S. Dist. LEXIS 36526, at
*60–61 (N.D. Fla. Jan. 24, 2017) (collecting cases), *report and recommendation adopted
by* 2017 U.S. Dist. LEXIS 36504, at *1 (N.D. Fla. Mar. 13, 2017).

Here, Petitioner provides no evidence to support his claim other than the
weights and package counts, which do not demonstrate a probability (rather than a
mere possibility) of tampering. As Petitioner asserts, one of the arrest reports indicates
that police found one hundred bags of cocaine weighing a total of about twenty-five
grams, but the FDLE report shows ninety-two bags of cocaine weighing a total of
twenty-nine grams. (Dkt. 1 at 24; *see* Dkt. 10-1 at 408, 562, 723, 761.) However,
Sergeant Varkony's sworn supplemental report supports that he miscounted the
smaller packages of cocaine, (Dkt. 10-1 at 560), and Petitioner provides no evidence
to the contrary. Further, the difference between the weight recorded in the police
report and the weight recorded in the FDLE report is approximately four grams, which
does not demonstrate a gross disparity. While the FDLE weighed only seventy-five
of the ninety-two bags of cocaine to reach that total, Petitioner provides no evidence
to show how much the additional bags may have weighed.[10]

As for the heroin, Petitioner argues that the police report recorded forty-nine

---

[10] Indeed, in Ground Eight, Petitioner surmises that the additional bags were empty.

bags of heroin weighing approximately nineteen grams, yet the FDLE report recorded fifty bags of heroin, which still weighed approximately nineteen grams even though the heroin was weighed out of the bags. (Dkt. 1 at 24; *see* Dkt. 10-1 at 761.)  The arrest report states that "[a]ll the drugs['] weights [were of] the substances only and [did] not include the plastic bags."  (Dkt. 10-1 at 13.)  In any event, the discrepancy between the two weights is negligible, and the discrepancy regarding the number of bags found is only one bag—which does not constitute a gross discrepancy.  Therefore, Petitioner has not demonstrated a probability that the evidence was tampered with.

As the Northern District of Florida determined when presented with a similar circumstance,

> [w]ithout any evidence suggesting that the [s]tate would not have been able to establish a chain of custody, or otherwise clearly explain the weight discrepancy, [the p]etitioner cannot show a reasonable probability that the post-conviction court would have concluded that (1) no competent trial counsel would have forgone the suppression issue, and (2) there is a reasonable probability [that] the trial court would have granted the motion to suppress if trial counsel had made one.

*Thurber*, 2017 U.S. Dist. LEXIS 36526, at *62–64 (finding that the discrepancy was "not sufficient to show a reasonable probability that post-conviction relief would have been granted" where the "officers seized 'approximately' 280 grams of 'meth oil' from [the p]etitioner's residence[] and the FDLE report stat[ed] that precisely 219.7 grams of methamphetamine was present in the liquid submitted for testing").

"A lawyer cannot be deficient for failing to raise a meritless claim . . . ." *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).  Consequently, given

Petitioner's failure to demonstrate a probability of tampering, Petitioner has not shown counsel erred by failing to move to suppress the evidence. Because Petitioner has not demonstrated such error, Petitioner has not shown that this claim of ineffective assistance of counsel is substantial within the meaning of *Martinez*, and *Martinez* does not permit Petitioner to overcome the procedural default of this claim. This claim is therefore procedurally barred from federal habeas review.

### e. *Strickland* Prejudice

Even if Petitioner had shown that counsel erred by failing to review the discovery, to familiarize himself with the discovery, to provide the discovery to Petitioner, to advise Petitioner about the discovery, to investigate further the discrepancies in the cocaine and heroin evidence, or to move to suppress the cocaine and heroin evidence, Petitioner has not shown prejudice from any such error. Petitioner testified at the evidentiary hearing that he was, in fact, in possession of firearms and trafficking amounts of narcotics at the time he was stopped. (Dkt. 10-1 at 689.) Additionally, the lightest of the weights recorded was enough to support the charged crimes. *See Kelly v. Fla. Dep't of Corr.*, No. 20-CV-14348-CAN, 2022 U.S. Dist. LEXIS 104158, at *30–31 (S.D. Fla. June 10, 2022), *report and recommendation accepted by* 2022 U.S. Dist. LEXIS 117934, at *1 (S.D. Fla. July 5, 2022). Moreover, by his own admission, Petitioner had the photographs and video of his arrest, the audio recording of his jail telephone call, and the FDLE lab reports before he entered his no contest plea, and he was aware, by the time jury selection was to begin and before he entered his plea, of the discrepancies in the cocaine and heroin evidence that he now

challenges. (Dkt. 10-1 at 410, 413–14, 677.) Yet he still chose to plead no contest. As the post-conviction court determined, Petitioner presented no evidence that the discrepancies affected that decision. *See Kelly*, 2022 U.S. Dist. LEXIS 104158, at *26 (finding plea not involuntary where, among other things, the petitioner "was aware of the alleged tampering issues and the fact that counsel had not taken depositions of individuals involved in weighing the evidence at the time he decided to enter an open plea" (quotation omitted)). Accordingly, Petitioner failed to show that his no contest plea was entered unknowingly or involuntarily. As Petitioner has not shown the requisite error or prejudice under *Strickland*, Petitioner failed to demonstrate ineffective assistance of counsel as to Grounds Five and Six.

### 6. Ground Seven

In Ground Seven, Petitioner contends that counsel erred by failing to move for sanctions under *Brady* due to late disclosure of the FDLE lab reports and of Sergeant Varkony's supplemental report. (Dkt. 1 at 27.) He states that counsel "knowingly commit[t]ed p[e]r[j]ury to help the state cover up these *Brady* violations at the [Rule] 3.850 evident[i]ar[y] hearing[,] w[h]ere the state and counsel insist[ed] that this supplemental police report was rec[e]ived the day before trial and that counsel had rec[e]ived the FDLE lab reports before then." (*Id.*) Petitioner asserts that all the reports were withheld from him "until it was to[o] late for him to understand the scope of the discrepancies[] and to seek advice from more compet[e]nt counsel," thereby "produc[ing] a trial setting that was fundamental[l]y unfair and [that] violated due

process." (*Id.*)  According to Petitioner, effective assistance of counsel in this regard "would have changed the outcome of the[] proce[e]dings." (*Id.*)  Petitioner did not raise Ground Seven in the state courts but argues that appellate counsel "did not file this claim correctly." (*Id.* at 28.)

To the extent that Ground Seven may be construed to assert a claim of prosecutorial error (that is, that the state erred by untimely disclosure of these discovery items), Petitioner did not raise such a claim on direct appeal. (Dkt. 10-1 at 96–107).  Nor did he raise a related claim of ineffective assistance of appellate counsel in the state courts. (*Id.* at 508–18, 809–39.)  *Martinez* does not apply in such a circumstance to overcome the default.  *See Davila v. Davis*, 582 U.S. 521, 529 (2017) (holding that *Martinez* does not "allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state post[-]conviction counsel provides ineffective assistance by failing to raise that claim").  Therefore, any claim of prosecutorial error is defaulted and procedurally barred from federal habeas review.

As for Petitioner's claim that trial counsel erred by failing to move for sanctions for the late disclosure of the FDLE reports, the claim formed part of Ground Five, analyzed above, and was part of the fifth claim raised in Petitioner's Rule 3.850 proceedings. (Dkt. 10-1 at 516–17.)  Because the post-conviction court found that the disclosures were timely under Florida law, counsel did not err by failing to move for sanctions.  Although Petitioner states that counsel's testimony regarding the disclosure of the evidence constituted perjury, (Dkt. 1 at 27), he provides no evidence to support

that position.    The post-conviction court credited counsel's testimony, and as
explained above, Petitioner presents no clear or convincing evidence to overcome the
presumption that the post-conviction court's credibility determination was correct. *See*
28 U.S.C. § 2254(e)(1).

Finally, Petitioner did not raise before the post-conviction court the Ground
Seven claim that counsel should have moved for *Brady* sanctions based on the late
disclosure of or failure to disclose Sergeant Varkony's supplemental report.  (Dkt. 10-
1 at 516–17, 809–38.)   *Martinez* does not operate to excuse the procedural default
because Petitioner fails to demonstrate a substantial claim of ineffective assistance of
trial counsel.  As previously explained regarding Ground Five, the post-conviction
court determined that Sergeant Varkony's supplemental report was timely disclosed
under Florida law on September 21, 2016, which was well before the March 2017 trial
date.  (*Id.* at 548.)  Given the state's notice of the disclosure filed in the record, (*id.* at
558–60), that decision was not an unreasonable determination of the facts.  Because
the supplemental report was timely disclosed, Petitioner has not demonstrated that
counsel erred by failing to move for sanctions.  Nor has he demonstrated prejudice
from that failure, as any such motion for sanctions would have been futile.  (*Id.* at 548.)
This claim thus remains procedurally defaulted and barred from federal habeas review.

Accordingly, the state courts' decisions that the disclosures of the FDLE reports
were timely and counsel was not ineffective for failing to move for sanctions were not
contrary to, or unreasonable applications of, federal law or based on an unreasonable
determination of the facts, and the other claims asserted in Ground Seven are

procedurally barred from federal habeas review.

### 7. Ground Eight

In Ground Eight, Petitioner contends that trial counsel "fail[ed] to file a *Greenwade* violation for officers weighing the heroin and cocaine out of their individual bag[]s." (Dkt. 1 at 28.) In *Greenwade v. State*, 124 So. 3d 215 (Fla. 2013), the Florida Supreme Court held that

> to establish beyond a reasonable doubt that individually wrapped packets of white powder meet the statutory threshold for weight in trafficking prosecutions, the [s]tate must chemically prove that each individually wrapped packet contains at least a mixture of a controlled substance before it may combine the contents and determine whether those contents meet the statutory threshold for weight.

*Id.* at 229. Petitioner asserts that "officers in this case claimed to have weighed the drugs . . . without the bags and the[re] is evidence to support that," including that the FDLE reported receiving an extra bag of heroin and fewer bags of cocaine and did not weigh seventeen bags of cocaine. (Dkt. 1 at 28.) Petitioner explains that the seventeen bags were "most likely" not weighed because "they were empty." (*Id.*; *see also id.* at 24.) He urges that had he "known of a potential basis to change the charges against him from trafficking to possession, he would not have entered a plea," (*id.* at 28), and he "begs th[e] . . . [c]ourt to grant [him] the relief he is entitled to[:] that both the heroin and cocaine charges be changed to simple possession," (Dkt. 12 at 19).

Petitioner concedes that this claim was not raised in the state courts but cites *Martinez* to overcome the default. (*Id.* at 18.) As with his other defaulted claims,

however, Petitioner fails to demonstrate a "substantial" claim of ineffective assistance of counsel.  First, Petitioner was not charged or convicted of trafficking in cocaine. Therefore, *Greenwade* does not apply as Petitioner alleges.

Second, a "petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation." *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001).  "Where . . . the evidence does not clearly explain what happened, or . . . why something failed to happen, the party with the burden loses."  *Id.*  While the arrest report indicates the total weight of the drugs comprised the weight of the substance only (not the bags), the report does not indicate how that total weight was obtained—that is, (1) by finding the weight of the substance in each bag, returning the substance to each individual bag, and adding the weights together, (2) by commingling the substances from all the bags to find the total weight and then redistributing the substances into the individual bags, or (3) by employing some other method.  Petitioner merely speculates—without support—that the individual bags of drugs were commingled and that the bags of cocaine the FDLE did not weigh were empty.

Third, as explained above, Petitioner conceded at the evidentiary hearing that he was in fact in possession of firearms and trafficking amounts of narcotics at the time he was stopped.  (Dkt. 10-1 at 689.)  As also noted, Petitioner was aware of the evidentiary discrepancies by the time he entered his plea.  (*Id.* at 413–14, 677.) However, he still chose to plead no contest and knowingly gave up any opportunity to challenge the discrepancies at trial.  (*Id.* at 348–49.)  As he explained, he was aware

that he would likely lose at trial, and he believed it was in his best interest to enter the plea. (*Id.* at 348–49, 351.)  Thus, Petitioner has not shown that he would have forgone entering a plea to take his chances at trial absent the alleged errors of counsel.

Accordingly, Petitioner has not demonstrated that counsel erred, that he was prejudiced by any alleged error, or that the claim presented in Ground Eight is "substantial."  *Martinez* does not supply cause to overcome the procedural default. Ground Eight is therefore procedurally barred from federal habeas review.

## 8. Certificate of Appealability

A court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing, the "petitioner must demonstrate that reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *accord Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).  However, the petitioner need not "show[] that the appeal will succeed."  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, Petitioner has not demonstrated that reasonable jurists would find the court's assessment of the constitutional claims and procedural rulings debatable or wrong.  Further, Petitioner failed to make a substantial showing of the denial of a constitutional right.  Thus, the court denies Petitioner a certificate of appealability and leave to proceed in forma pauperis.

## CONCLUSION

Accordingly:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**, and this case is

   **DISMISSED with prejudice**.

2. Petitioner is **DENIED** a certificate of appealability and leave to proceed in

   forma pauperis.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines,

   enter judgment in favor of Respondents, and close this case.

   **ORDERED** in Orlando, Florida, on February 6, 2025.



_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Unrepresented Party
Counsel of Record


- 49 -